AUG 1 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


IN RE: MILTON JOSEPH TAYLOR,
         Petitioner,

1175 Steven Rd. S.E.
Washington D.C., 20020


        v.

ELEANOR HOLMES-NORTON
CONGRESS-WOMAN FOR D.C.
2136 Rayburn House Office
Building, Wash. D.C.

U.S. PAROLE COMMISSION
5550 Friedship Blvd, Suite 402
Chevy Chase, Maryland 20815-7286

U.S. MARSHAL SERVICES
333 Constitution Ave., N.W.
Washington, D.C., 20001

COURT SERVICES AND OFFENDER
SUPERVISION FOR THE DISTRICT OF
COLUMBIA, 4415 South Capitol St., S.E.
Washington, D.C., 20032
                      Respondents.     /

CIVIL ACTION NO._____
(28 U.S.C. § 1651 and 1361)

CASE NUMBER  1:05CV01634

JUDGE: Emmet G. Sullivan

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 08/12/2005


AN EMERGENCY WRIT OF MANDAMUS


Milton Taylor moves this Honorable Court to issue an

extraordinary writ of mandamus against the above named

respondents, because the U.S. Parole Commission and the

Court Services and Offender Supervision "LACKS SUBJECT

MATTER JURISDICTION" over the petitioner's sentence. Also,

Congress is in violation of the Federal Laws, by extending

the U.S. Parole Commission authority to function in the

capacity for "ARTICLE III JUDGES".

RECEIVED

AUG - 5 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## SUBJECT MATTER JURISDICTION

Jurisdiction is conferred upon this Honorable Court pursuant to Title 28 U.S.C. § 1651 , because this is a "PRIMA FACIE CASE" that the respondents cannot dispute at all, and the presiding judge that will be assign to this case, has taken a "SWORN OATH IN HIS/HER OFFICIAL OFFICE" to uphold the law in good faith, pursuant to Title 28 U.S.C. § 453. This Court has jurisdiction to review [ the petitioner's] claim only to the extent he/she alleges that [the Parole Commission] has violated the Constitution or acted 'beyond the scope of discretion granted by Congress." Id. at 60, quoting Wallace v. Christensen, 802 F. 2d 1539, 1551 (9th Cir. 1986). In this case at bar, the standard of judicial review is whether the agency's action is 'arbitrary, capricious, an abused of discretion, or other wise not in accordance with the law." 5 U.S.C. § 706 (2) (A) (1976). Abuse of discretion may be found "only if there is no evidence to support the decision or if the decision is based on an improper understanding of the law. Song Jook Suh v. Rosenberg, 437 F. 2d 1098, 1102 (9th Cir. 1971)

## ISSUE FOR REVIEW

(1). Whether the U.S. Parole Commission to continue operating in a "FRAUDULENT" manner for Congress?

(2). Whether the Superior Court Judges had "RELINQUISHED" their judicial duties to hold a "SHOW CAUSE HEARING" on D.C. Code Offenders ?

(3). Whether the U.S. Marshal Services had been unlawfully "HONORED" parole violation arrest warrant for the U.S. Parole Commission?

(4). Whether Congress had impermissibly granted the U.S. Parole Commission excessive power to perform judicial functions and legislative functions, in violation of the "SEPARATION OF POWER ?

## INTRODUCTION

Mr. Milton J. Taylor was convicted on June 14, 2002 in the Superior Court for the District of Columbia for Distribution of Heroin, which he had received a sentence to five (5) Suspended sentence, five (5) years Supervised Release Term and two (2) years probation term. On May 7th, 2004, Mr. Taylor probation was "REVOKED" by Judge Wendell P. Gardner, Jr., which he had imposed a "NEW" sentence of 20 months in jail and imposed a two (2) years Supervised Release Term, that was placed in the hands on the "U.S. Parole Commission's" authority <u>unlawfully</u>.

## NATURE OF THE CASE

The enactment of statutes that authorize the United States Parole Commission to run a wide-spread conflicts ~~AMONG~~ judicial branch, when parole officials are under the Executive Branch. It is well settled that United States President of America cannot "LOCK-UP" citizens within the United States himself, a person must comes. through a judicial court, before him or her can be prosecuted only by an "INDICTMENT for allege charges. The president main duty is to "APPOINT" executive officials to perform proper duties. Futher-more, Congress had relinquish his or her act of duty, by placing the Parole Board in existence to operate "FRAUDULENT" against state prisoners or federal prisoner and the original sentencing judge, legally loses jurisdiction of the second portion of the prisoner's remaining sentence. Congress intention to "EXTEND" the Parole Commission's authority any further, will be consenting and co-sign—ing to an illegal "KID-NAPPING RING" among governmental officials. This is a crime hidden behind "HIGH-RANK TITLES" and what the Framers intended the United States Constitutional Amendments to protect society. This case cause for the releasing of all state prisoners who are being unlawfully confined in all prison facilities, regardless of Congress-ional "EXPERIMENTS" that has disrupted the law. The peace of society depends on Justice, Truth and Equality.

## IMPROPER REVOCATION HEARINGS

Revocation of parole hearings has been delegated to an "EXECUTIVE BRANCH" beyond the proper legislative law, whereas parole officials makes full determination on all fact-findings and they "USURP" judicial functions to punish all parolees, in violation of the "SEPARATION OF POWER." There is no "BOND HEARING" attached to parole revocation hearings, but strictly "LOCK-UP" by a "BOGUE" parole detainer warrant executed by the U.S. Marshal Office in bad faith.

## PAROLE PROCEDURES ARE UNCONSTITUTIONAL

State courts had delegated their judicial authority to the Parole Commission to detain, revoke and release prisoners or parole violators on point, whether it be a condition alleged violation, new criminal conduct or any other court's conditions. A failure to report to a parole officer or failure to submit a written change of address is an automatical violation of parole, without any proper court's hearing. These failures of condition above has been "SUBSTITUTED" into the place for a court's legal "FAILURE TO APPEAL" charge under parole revocation procedures in disguised. This constituted a clear-cut violation of fair due process of the law. But proper jurisdiction lies with only on a court, not the Parole Commission or his staff members.

## STATEMENT OF THIS CASE

This Honorable Court is vested with the judicial authority to resolve the controversies issues arising between the phase-In and Phase-Out in regards to the Parole Commission. Parole Officials "LACKS SUBJECT MATTER JURISDICTION" to review any such "FINAL ADJUDICATION ON A COURT'S SENTENCE" or to "MAKE ANY EVALUATION ON A PAROLEE RELEASE FROM CUSTODY" nor can parole officials lodge "detainers or arrest warrants" with the United States Marshal Services to "haul" a prisoner or parolee back into the Department of Correction for a parole In-House detention hearing at all. No Administrative Sanctions cannot result to judicial punishment at all, without the signature of an "ARTICLE III JUDGE", imposing a "NEW" Judgment and Commitment Order. It is well settled by the law, a prisoner cannot never be consider a parole violator in jail under prison infractions or for the nature of his/her criminal offense charges and all incarcerartion must carry into effect along with a Judgment and Commitment Order, if it doesn't shows in this above form, the confinement is unlawful and the detainer must be void. The D.C. Code § 11-923 (b), gives subject matter jurisdiction to the Superior Court over criminal cases. D.C. Code § 24-406 (a) gives parole officials authorization to run an "ENCROACHMENT" on judicial revocation hearings and abolished that legal process, as well as "USURP" power to deprived prisoners of their Street Time Credits.

<u>PRELIMINARY ARGUMENTS FOR REVIEW</u>

Whether the issues in this case may "EXPOSE" governmental officials "WRONG-DOINGS" among prisoners lock-up or that remains to be on parole in society, is not a major concern to protect the Government's Interest at all, unless the due administration of justice will be obstructed further.

The power to arraign a person, hold without a bond, release a person, sign official arrest warrants or detainers, fine, punish and sentence a person, decide court's proceedings, sign Judgment and Commitment Orders, hold Show Cause Hearing and parole revocation hearings, pretrial hearings, revoke a person back into custody, all remains into the sole discretion of an "ARTICLE III JUDGE" <u>only</u>.

The distinction between executive power over the execution of a sentence and judicial power over the imposition of a sentence was explained nearly seventy (70) years ago by the Supreme Court:

> The judicial power and the executive power over sentence are readily distinguishable. To render judgment is a judicial function. To carry the judgment into effect is an executive function. To cut short a sentence by an act of clemency is an exercise of executive power which abridges the enforcement of the judgment, but does not alter it qua judgment. To reduce a sentence by amendment alters the terms of the judgment itself and is a judicial act as much as the imposition of the sentence in the first instance. <u>U.S.</u> v <u>Benz</u>, 282 U.S. 304, 311, 51 S. Ct. 113, 75 L. Ed. 354 (1931).

Thus, although the executive branch may "cut short a sentence and imposing a sentence in the first instance are solely "judicial acts." The statutes governing sentencing federal sentencing confirm that courts and no other federal bodies are vested with the power to impose a sentence. Section 3551 of the Chapter on Sentences in the United States Code provides that "a defendant who has been guilty of an offense ... shall be sentenced in accordance with the provisions of this subchapter." 18 U.S.C.A. § 3551 (a) (1985) (emphasis added). Section 3553 repeatedly states that "the court shall impose a sentence" or the court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." Id, Id. (Supp. 1999)( emphasis); see also §§ 3354-3556, -3562-3564; 3572 (1985). The statutes dealing with imprisonment, see §§ 3582-3586, also speak exclusively of "the court," and never once mention that any other branch or agency of the government has the authority to impose a term of imprisonment. In fact, the petitioner contends that statute D.C. Code § 11-923 (b) grants jurisdiction to Lower Courts over criminal cases. Moreover, the petitioner (Pro Bono Counsel) have found no instance where any federal entity, other than a judicial officer of the United States, has been authorized to commit a person to a term of imprisonment and Congress delegation of power to the Executive Branch has been found to be unconstitutional.

- 8 -

under the jurisdiction of the Board of Parole for Virginia or the
Board of Parole for Maryland, they all had been <u>mistreated</u> by
governmental officials and their Eighth Amendment has been really
jeopardize. This Honorable Court should re-visit past abolishing
of both Parole Boards and interpret the law in good faith, as
justice require.

The approval of the Parole Commission cannot operate
without the granting of Congress permission and  Congress can
re-call" any of his or her unlawful decision or statature that
the public may question the impartiality of Congress.  Furthermore,
the petitioner has not been ordered by any court to serve a "LIFE-
Sentence" whiled being under a parole board and parole officials
cannot take up that position to set the law in defiance to punish
a Class of Parolees.  See <u>Butz</u> v. <u>Economon</u>, 438 U.S. 478, 57 L. Ed.
2d 895, 98 S. Ct. 2894.

Any prison term that the petitioner had served under the
Parole Commission's authority, must be credit to another sentence
or in alternative, he must receive "MONETARY DAMAGES" for his un-
lawful confinement, whether it be any §FORFEITURE" of his Good
Time Credits.  See <u>Reno</u> v. <u>Koray</u>, U.S. Pa. 1995, 115 S. Ct. 2021,
515 U.S. 50, 132 L. Ed. 2d 46, on remand 68 F. 3d 1538.  Good Time
Credits are a Congressional Benefit and cannot be deducted from
a prisoner sentence under no citcumstances at all, even if the
sentencing court order a mandatory  minimum of maximum sentence.
This does not exclude the Criminal Statute 18 U.S.C. § 924 (c).

It is very clear from the record that, the U.S. Parole

Commission's decision in NOT APPEALABLE," but the prisoners

remains to sufferred in jail, without an appellate-process.

See attached Notice of Action.   The prisoner have a legal

right to appeal any portion of his sentence, but where there

is no right to appeal under a parole proceeding, there is

no "FAIR DUE PROCESS OF THE LAW." Furthermore, prisoners or

parolees does not receive two (2) constitutionally required

hearing, as provided in Gagnon v. Scarpelli, 411 U.S. 778

(1973).   Scarpelli flatly holds that probation revocation,

like a parole revocations, is so serious a loss and deprivation

of liberty that the probationer "must be accorded" due process.

And "due process," Supreme Court went on to specify, means that

the probationer " is entitle to two hearings." See Morrisey v.

Brewer, 408 U.S. 471 (1972).   In Applewhite v. United States,

614 A. 2d 888, 889 (D.C. 1992) (noting, at footnote 3, p. 889.

(1992), Also codified in D.C. Superior Court Criminal

Rule 32.1 .   ALL parole sanctions, Reduction of

'Streetime Credits and Good Time Credits must

be restore back to the petitioner's original

sentence. Furthermore, the respondents cannot

'show cause' that the petitioner sentence has never

been "Revoke" by his sentencing Judge, whiled

being detain in the custody of the Bureau of Prisons.

## THE REASON WHY THE WRIT OF MANDAMUS SHOULD BE GRANTED

The petitioner is a D.C. Code Offender and any small violation
that may occur doing his Supervised Release Term, a warrant for
his arrest will go directly to the U.S. Marshal service without
any question ask.  The petitioner contends that there will not be
a "JUDGMENT AND COMMITMENT ORDER" signed by any Federal or State
judge at all and the Warden at the D.C. Jail will not have legal
jurisdiction to process the petitioner.  A writ of mandamus should
be filed against the U.S. Marshall Service office, to restrict them
from arresting parole violators, that the U.S. Parole Commission
request for a detainer warrant and this would prevent the United
States Marshals for engaging into a "GRAND-CONSPIRACY" to illegally
"KID-NAP" D.C. Code offemders.  Furthermore, the petitioner's
original pleaded criminal charge was actually based on an " 18
Months Cap" that was "BREACHED" by Judge Wendell P. Gardner, Jr.
and the two (2) years probation term, in the first instance, was
insidiously converted to a two (2) years Supervise Release Term,
so that, Mr. Taylor could serve that turn again, in violation of THE
Double Jeopardy clause and an "OVER-LAP" in the original sentence.
See U.S. v. Thorne, 153 F. 3d. 130 (4th Cir. 1998).  As long as
the U.S. Parole Commission continue to hold judicial hearings on
state parolees original sentences, the violation of parole or
Supervised Release Terms must be vacated as unconstitutional.

This question arises, of coures, whether, whatever may be
the policy implications To this development, the de facto transfer
of the sentencing authority from the judge to the Parole Commission
etc., result in a violation of due process. <u>Revocation Hearings
remains with a judicial court and not a parole board or prison
disciplinary boards at all</u>. The safe guard of the Due Process Clause
Are "triggered" only when a "Fourteenth Amendment" protected <u>liberty</u>
interest is at stake.  See <u>Meachum</u> v. <u>Fano</u>, 427 U.S. 215, 223-24, 96
S. Ct. 2532, 2537-38, 49 L. Ed. 2d 451 (1976).  "Liberty interest"
protect by the Fourteenth Amendment may arise from two (2) sources
-------- the Due Process Clause itself and the laws of the State."
<u>Hewitt</u> v. <u>Helms</u>, 459 US _____, 103 S. Ct. 864, 868-69, 74 L. Ed
675 (1983).  More directly, the issue is whether our constitutional
system of due process tolerates a situation when the key sentencing
responsibility is exercised not by a judge but by the U.S. Parole
Commission, <u>through an unconstitutional D.C. Code § 24-406 statute
which had "ABOLISHED" the judicial legal process and revocation
hearing process, but strongly runs an "ENCOARCHMENT" on the D.C.
Code § 11-923 (b) , D.C. Code § 24-221-03, Title 18 U.S.C. § 3551
and 3582-3586</u>.  State courts, equally with federal courts, are
under an obligation to guard and enforce every right secured by
the federal constitution.  <u>Mooney</u> v. <u>Holohan</u>, 294 U.S. 103, 55 S.
Ct. 340, 3 L. Ed. 604.

-12-

This Honorable Court must take extreme "CAUTIOUS" and recognize that the petitioner is not "IGNORANCE OF THE LAW", well-known to this court under "PRO SE" status and he's not "OATH-BOUND" to litigate among courts as "LUKE-WARM" at all. The petitioner had challenged the U.S. Parole Commission's misconduct in other inmates writ of habeas corpus, but judges had been reluctant to properly address the merits in those cases, so therefore, the petitioner is compelled to bring this extraordinary Writ of Mandamus against the respondents himself, because the petitioner's Liberty Interest has been placed in jeopardy, by bad provision of the laws. The petitioner has never "voluntarily waived his right to a "SHOW CAUSE" parole revocation hearing in any Federal or State Court, but he's compelled to had been placed under the U.S. Parole Commission's false jurisdiction. See attached exhibit.

This court main concern will be the issue for the U.S. Parole Commission's "PHASE-OUT AND PHASE-IN" and whether the petitioner must remains to *BE* under the jurisdiction of CSOSA rules. Congress cannot approve any more extension for the U.S. Parole Commission and the petitioner's "Memorandum of Laws In Support of this Writ" will really explain why. The writ should be granted as expediously and compel the respondents to "REPENT" from their injustice.

Respectfully submitted,

*Milton J. Taylor*

MILTON J. TAYLOR

Dated: August 4th, 2005    - 13 -

## CONCLUSION

The petitioner have no other speedily remedies at law, to prevent Congress from extending the U.S. Parole Commission's granted authority to do "HARM" to D.C. Code Offenders and Supervised Release offenders had always been brought back before the sentencing court, but in this case at bar, the petitioner will never be brought back before the Superior Court on a future parole violation. Furthermore, there is a "THREAT" to his liberty interest, if he do violate parole or may I say his two (2) years Supervise Release Term, he "STREET TIME CREDITS" will be forfeited by the U.S. Parole Commission. See <u>Gulfstream Aerospace Corp</u> v. <u>Mayacamas</u>, 485 U.S. 289 (1988).

Respectfully submitted,

*Milton J. Taylor*

MILTON JOSEPH TAYLOR

Dated: August 4th, 2005.

cc: Attorney General for the District of Columbia
Department of Justice.

— 14 —

**U.S. Department of Justice**
**United States Parole Commission**

### CERTIFICATE OF SUPERVISED RELEASE
### District of Columbia Offender
### Release date : 5-23-2005

Having determined that **Taylor, Milton**, Register No. **06193-016**, (DCDC No. **202-514**), is to be released to supervised release for a term of **24** months upon release from imprisonment, the United States Parole Commission (the "Commission") ORDERS that the conditions listed in this certificate apply during that term of supervised release.

Given under the hand and the seal of the Commission on April 22, 2005.

UNITED STATES PAROLE COMMISSION

By: Joann L. Kelley, Case Analyst

### ACKNOWLEDGMENT OF CONDITIONS

I have read, or had read to me, the conditions that are listed on this CERTIFICATE OF SUPERVISED RELEASE. I have received a copy of this CERTIFICATE OF SUPERVISED RELEASE. I fully understand the conditions that have been imposed upon me and know that if I violate any of those conditions I may be sent back to prison.

### CONSENT TO DISCLOSURE OF DRUG/ALCOHOL TREATMENT INFORMATION

By signing this CERTIFICATE OF SUPERVISED RELEASE, I consent to unrestricted communication between any facility administering a drug or alcohol treatment program in which I am or will be participating, on the one hand, and the Commission and the office responsible for supervising me, on the other hand. I consent to disclosure by such facility to the Commission and the office responsible for supervising me of any information requested related to my supervision, and the disclosure by the Commission and the office supervising me to any agency that requires such information for the performance of an official duty. This consent is irrevocable until the end of the term of supervised release.

_Milton J. Taylor_                          _06193-016_
Name                                         Reg. No.

Witnessed: _Tyrone Will_      CSO      _7-19-05_
            Name and Title                   Date

05 1634

FILED

AUG 1 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
District of Columbia

Case No.: **F4745.01**
PDID No.: **318.437**

vs.

Milton Taylor

Probation Revoked

### JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☐ Not Guilty ☐ Guilty to the Charge(s) of _____
Count "B", Distribution of Heroin

and having been found guilty by ☐ Jury ☒ Court, it is hereby **ORDERED** that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby **SENTENCED** to _____
Twenty (20) months in jail, Two (2) years Supervised Release.

☐  **MANDATORY MINIMUM** term of _____ applies to the sentence imposed

☐  **MANDATORY MINIMUM** term does not apply.

☒  **ORDERED** that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above. Credit for time served.

☐  **ORDERED** that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 903[b] of the D.C. Code [Youth Rehabilitation Act 1985].

☐  **ORDERED** that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further **ORDERED** that while on probation the defendant observe the following marked conditions of probation:

☐   Observe the general conditions of probation listed on the back of this order.

☐   Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

☐   Treatment for ☐ alcohol problems ☐ drug dependency or abuse as follows: _____

☐   Restitution of $_____ in monthly installments of $_____ beginning _____
(see reverse side for payment instructions.)

☐   The Court will distribute monies to _____

Costs in the aggregate amount of $_____ have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☐ have not been paid.

**ORDERED** that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the copy shall serve the commitment/order for the defendant.

May 7, 2004
_____
Date

Certification by Clerk pursuant to Criminal Rule 32(d).

May 7, 2004
_____
Date

_____
Judge W.P. Gardner Jr

_____
Deputy Clerk

MEMORANDUM OF LAWS IN SUPPORT OF THE PETITIONER'S
WRIT OF *MANDAMUS* FILED UNDER PRO SE STATUS

## ARGUMENTS

1.   Petitioner has never voluntarily waived his right to a
     "SHOW CAUSE" parole revocation hearing in any Court of
     Law, but is compelled to had been seen by a Parole Board.

In this case at bar, the respondents cannot produce any
physical records that will show this Honorable Court in regards
to the petitioner voluntarily waiving his right to a judicial
parole revocation hearing in jail or out in society. This truly
constituted that the Parole Panel is operating in a "FRAUDULENT"
manner, beyond the integrity of the law, with statutory approval foR
Congress legislative power. But Congress consent must be investigated.

In accordance, to the above truthfully statement, the
trial court's sentencing judge has "RELINQUISHED" his or her power
to revoke a prisoner's violation of parole or make a second fact-
finding on his or her misconduct whiled being in the custody of the
prison authority, when the prison infractions are administrative
sanctions. For this cause, the parolee must be release back to
society and commit a "NEW CRIMINAL CONDUCT" before any kind of
revocation can take place in the sentencing court. This Honorable
Court must relive the petitioner from any adverse present and future
sanctions by parole officials and place a "CAP" on Congress intention
to extent the U.S. Parole Commission's authority, pursuant to Title
28 U.S.C. § 2243.

~ 1 ~

## THRESHOLD ISSUES

> Whether Congress personal granted statutory laws
> remains to allow parole and prison officials to
> do further injustice to state prisoners under any
> parole procedures ?

1.    Parolee or defendants that are convicted and sentence in a

state court have a legal "EXPECTATION" to be granted parole or

Supervise Release term upon their one-third minimum sentence re-

quire by the criminal statute, without the infringement of Govern-

mental officials and the expectation extends to the Congressional

Benefit for being awarded Good Time Credits, when prisoners had

performed "FREE-LABOR" for..., the prison's facility.  When the

sentencing judge makes his final determination on the sentence, the

release date must not appear to be "VAGUE" at all, whereas prison

officials <u>routinely</u> miscalculate the sentence on purpose, just to

prolong the stay of the prisoner's release date, to obtain "Federal

Funds" from the Government.  There must be  .. a <u>clear language</u> in

the Judgment and Commitment Order that will stipulates a minimum

release term date and the expiration for the maximum term date also'

The "INTERPRETATION OF THE LAW" cannot never falls in the hands of

the Parole Board or Prison In-house Hearings at all.  Most of all,

the legislative laws must squarely be within the bounds of the Con-

stitution, without any "ENCROACHMENT" on other branches of the law.

See <u>Mistretta</u> v. <u>U.S.</u>, 488 U.S. 361 (19890; see also, <u>Marbury</u> v.

<u>Madison</u>, 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1801).

- 2 -

> Whether Congress had impermissibly "DELEGATED"
> excecessive power to parole official to perform
> "JUDICIAL FUNCTIONS" over all detain and un-
> detain parolees expiration sentence ?

2.    Congress had impermissibly "DELEGATED" excessive power to

parole officials to perform JUDICIAL FUNCTIONS" over all detain

and un-detain parolees that may seem to had violated their own

parole conditions.  No prisoner cannot violate parole in jail,

when he has not ever been release to society nor can his Good

Time Credits be "FORFEITED" by prison officials, due to any prison

infractions that he or she may had "accumulated over the years,

because any administrative-punishment cannot ever result to a

deprivation of a prisoner's liberty interest, whether a defense

lawyer has been present or not at the "Prison-In-House Hearings"

which forfeiture of good time credits _INCREASE_ the release from

custody early.  The combination of depriving a prisoner of Good

Time Credits and the Parole Commission _REvoking_ parole, had really

"WHITE-WASHED" the expectation of the granting for parole, whereas

the prisoner may wined-up serving his entire full term sentence

in jail.  This constitute a wilfully and knowingly intent violation

of the "SEPARATION OF POWER", as well as an "EX POST FACTO CLAUSE"

violation.  See Weaver v. Graham, 430 U.S., at 28, 101 S. Ct. at

963-64.  An ex post facto law is one which imposed a punishment for

an act which was not punishable at the time it was committed; or

imposes additional punishment to that than prescribed.  Cummings v.

Missouri, 71 U.S. (4 Wall) 277, 325-26, 18 L. Ed. 356 (1867).

- 3 -

> Whether Congress had impermissibly granted prison officials the legislative authority to deprive a prisoner or prisoners of their "GOOD TIME CREDITS"" and had changed the "CONSTITUTIONAL ANALYSIS OF THE LAW ? "

3.    In the beginning, never once did Congress had taken a moment to realize or search beyond the enactment of any statute, to see if the statute will infringe upon defendants convicted in federal or state courts, but was only enacted to give prison officials excessive power to have dominion and control over prisoners early release dates of returning back to society.  When a prisoner is being confine to any prison facility, he or she adjust themselves to protect their own safety, regardless of what it take to do so and Congress had full knowledge of the above statement. There can NOT be a Criminal statute or Code of Federal Regulation enacted by Congress that will authorized prison officials   to set the law in defiance of impunity, to punish any prisoner who chose not work or submit a "DNA" in jail.

The Thirteenth Amendment prohibit any federal officials from creating prison policies (28 C.F.R. § 545.24 (c) that enslaved  prisoners to work beyond the minimum wages law of an  state or interfere with the Congressional Intent of Congress, that cause "INVOLUNTARY SERVITUDE."

- 4 -

Involuntary servitude is defined as "an action by the "MASTER" causing the "SERVANT" to have or to believe he has no way to avoid continued service or confinement. See U.S. v. Shackney, 333 F. 2d 475, 486 ( 2nd Cir. 1964).

Prison policies has less authority under the law, to had "Supersede The Congressional Intent of Congress", when Congress had stated that "INVOLUNTARY SLAVERY" shouldn't exist in any part of the United States. See Griffin v. Breckenridge, 403 US 88, 29 L. Ed. 2d 338, 350, 91 S, Ci. 1790. See also U.S. v. Kozminski, 487 US 931, 101 L. Ed. 2d 788, 106 S. Ct. 2751 (1988). Furthermore, in, Watson v. Graves, 909 F. 2d at 1549, prisoner who is not sentenced to hard labor retains his Thirteenth Amendment rights, but to prove violation thereof, prisoner must show he was subjected to involuntary servitude or slavery. 28 C.F.R. § 545.24 (c) which stipulates:

> An inmate, regardless of assignment, is expected to perform all assigned tasks diligently and conscientiously. Disciplinary action may be taken against an inmate who refuses to work, who otherwise evades attendance and performance standards in assigned activities, or who encourages others to do so.

Prisoners are compelled to pay for their own medicine, if they have more than six (6) dollars on their Inmate Account and some prisoner are force to pay for their own confinement in jail. This constitute a violation of Title 18 U.S.C. § 4007.

- 5 -

Whether a "CONSECUTIVE-SENTENCE" can be held in
abeyance for vindictive punishment beyond the
legislative intent of Congress and whether the
consecutive-sentence has been properly applied
to prisoners sentence ?

4. Federal and State judges have a tendency to impose a consecutive

sentence on a prisoner or defendant, without making any proper in-

struction on how a consecutive sentence must be applied to the im-

posed sentence and the prisoner will sufferred from "MULTIPLE PUNISH-

MENT" unknowingly. However, whiled the prisoner is being detained in

the Department of Correction (waiting to be seen under the new charge),

he or she may be found guilty or had pled guilty to the charges. The

sentencing judge may impose a consecutive sentence doing the sentencing

phase process and than choose to run the time consecutive to any other

sentence that the prisoner may be already      serving or that the

parole violation sentence may be in process or about to take place.


The proper way to interpret a consecutive sentence for judges

sitting on the bench today, is to advise them that once the "HAMMER"

takes place on the Judgment, that sentence must start to run on the

same day that any other sentence that has been running also. There

can be no "SPLIT-SENTENCE" from an indictment that has been prosecuted

on the same offense charges, to avoid vindictive prosecution and

vindictive punishment by the presiding judge, which will constitute

ex post facto punishment and double jeopardy. A consecutive-sentence

is define by not crediting past confinement before the "NEW" judgment

had taken place, unless the judge choose to run the past confinement

concurrently. See Whalen v. U.S.,445 US 684, 63 L Ed 2d 715, 100 S

- 6 -

Ct 1432.

For an example, when a prisoner is charged and convicted
of a drug offense and in possession of a gun, the court will
punish the defendant for the drugs, than the judge will impose a
five (5) years consecutive sentense under a mandatory law, when
there was only a "SINGLE OFFENSE" committed within that crime,
whether the gun was use for protection, in contrary as being a
possession of a hand gun in all actuality, pursuant to Title 21
U.S.C. § 841 and 18 U.S.C. § 924 (c). 18 U.S.C.§ 924 (c) does not
include any Good Time Credits at all, whereas the statute does
conflicts with Title 18 U.S.C. § 3624 does authorize Good Time
Credits to be awarded to all criminal sentences. The Double Jeopardy
Clause prohibit judges from imposing "VINDICTIVE PUNISHMENT" prior
to the pronouncement of the original sentence. And where a state
is precluded by the Double Jeopardy Clause of the Fifth Amendment
from "haling" a defendant into court on a charge, that he wouldn't
had been found guilty of. See Menna v. New-York, 423 US 61, 46 L.
Ed 2d 195, 96 S. Ct. 241. Furthermore, not to exclude imposing
a "JUXTAPOSED-SENTENCE" in violation of the Double Jeopardy Clause.
See U.S. v. Halper, 490 U.S. 435, 446-48, 109 S. Ct. 1892, 1900-02,
104 L. Ed. 2d 487, 500. In accordance with the above facts, prisoners
are being "DECEIVED" by the court, in regards of how a consecutive
sentence is being "MISAPPLIED" to their prison terms, prosecutors are
using "SHAM" statutes in their indictment, than the Parole Commission
and Prison Warden's detain 85 per cent of the population in jail.

- 7 -

> Whether State Contractual prisoners retain
> their "State 65 Percent Scale Law, being
> transfer to the Bureau of Prison ?

5.   D.C. Code Offenders are contractually prisoners confined

within the Bureau of Prison, due to the mere fact that Lorton

Reformatory was force to be closed.  In the midst of this grand

"TRANSFORMATION", the Mayor for the District of Columbia had

enter into a "CONTRACT AGREEMENT" with the Bureau of Prisons

Director and through this signed agreement, the D.C. Code Offenders

65 Per Cent Scale Law appearred to be "ABOLISHED" and the D.C. Code

Offenders was insidiously "SLIPPED UNDERNEATH OF THE FEDERAL 85 PER

CENT LAW" upon their "NEGOTIATION."  The negotiation had caused the

D.C. Code Offenders to lose 20 Per Cent of their prison confinement,

a longer prison term being housed within the Bureau of Prisons

Facility and an <u>intent</u> deprivation of their Liberty Interest.

D.C. Code Offenders would had served eight (8) months in

jail, if they was housed in state custody under their original State

65 Per Cent Scale Law, but instead, they are compelled by prison

officials Record Office, to serve ten (10) months and six (6) days

under the Federal 85 Per Cent Scale Law today.  Title 18 U.S.C. §

3624 cannot apply to D.C. Code Offenders, because that criminal

statute requires Federal prisoners to be awarded "54 Days Good Time

Credit a year and there's "EDUCATIONAL RESTRICTIONS" to meet the

requirement of obtaining Good Time Credits.

Furthermore, the Sentencing Reform Act of 1984 does not apply to D.C. Code Offenders, because federal prisoners does receive reductions within their own imposed sentence, when they pled guilty to their criminal charges. See United States Sentencing Guideline Manual 3E1.1

D.C. Code offenders cannot earn any credit towards their sentence for participating in a "DRUG TREATMENT PROGRAM", but Federal prisoners can receive a one (1) year reduction off their sentence, when they complete their 500 Hours Drug Treatment Program. This claim constitute a gross discrimination among a class of state prisoners, but not to exclude state prisoners out of Maryland and Virginia. All prisoners must be treated the same way in prison and out of prison. In Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), decided after Morissey, the Supreme Court has thrown additional light on prisoners constitutional rights. The case involved, among other things, the validity of procedures applied by state prison authorities in serious disciplinary proceedings which might result in loss of good-conduct time. The court emphasized that prisoners had not lost their constitutional rights by virtue of their confinement:

> There is no iron curtain drawn between
> the Constitution and the prisons of
> this country.   .   .   He [the prisoner]
> may not be deprived of his life, liberty
> or property without due process of law.
> Haines v. Kerner, 404 U.S. 519 ]92 S. Ct.
> 594, 30 L. Ed. 2d 652] (1972); Wilwording v.
> Swenson, 404 U.S. 249 [92 S. Ct. 407, 30 L.
> Ed. 2d 418] (1971), Screws v. U.S., 325 US 91,
> 65 S. Ct. 1031, 89 L. Ed 1494 (1945).

- 9 -

> Whether the Parole Commission has carried-out
> his rules, customs, procedures and regulation
> in bad faith, by the forfeiture of reducing.
> "STREET TIME CREDITS" ????

6.     The petitioner and defense counsel in this extraordinary

case, officially "SQUARE-OFF" from the judges decision in the

United States v. Noble, 887 F. Supp 11 and U.S. v. Noble, ____

F. 3d. _____, D.C. Circuit. decided by Silberman, Randolph,

and Tatel, Circuit Judges.(Their certify question for review in

that appeal consisted of: Under District of Columbia law given

the facts described below, did the United State Parole Commission

properly interpret section 24-206 (a) and 24-431 (a) of the District

of Columbia Code in deciding that, offer revocation of a person's

parole, time that the person spent on parole before revocation

cannot be credit against his sentence, in accordance to D.C. Code

24-206, enacted by Congress).

The set precedent decision in U.S. v. Noble above, the

three (3) Judge Panel failed to evaluate the merits, whether there

was an "ENCROACHMENT" on a parolee constitutional rights or whether

the decision or issues had conflicted with the "SEPARATION OF POWER"

doctrine, knowing that "EXECUTIVE-OFFICIALS" cannot perform any

judicial or legislative functions; by having full responsibility

over a prisoner or parolee entire sentence; and most of all, have

the legal authority to run a person's sentence consecutive  beyond

the statutory maximum original sentence. See U.S. v. Thorne, 153

F. 3d 130 (4th Cir. 1998).( District Court judge is prohibit from

running a sentence beyond the maximum sentencing guideline range

in federal courts.)

D.C. Code § 24-221.03.   Jail Time:   Parole which states:

>    (a)  Every person shall be given credit on the
> maximum and the minimum term of imprisonment for
> time spent in custody or on parole as a result of
> the offense for which the sentence was imposed.
> When entering the final order in any case, the
> court shall provide that the person be given credit
> for the time spent in custody or on parole as a
> result of the offense for which sentence was im-
> posed. (Apr. 11, 1987, D.C. Law 6-218, § 5, 34 DCR 484)

The Good Time Credits Act of 1996, D.C. ANN ¶¶ 24-428

to 24-434 (1989 Repl) allow prisoners to receive credits for

" STREET TIME" that is time served on parole.   A provision

of the Act codified at section 24-431 (A).   see <u>Luck v. District</u>

<u>of Columbia</u>, 617 A. 2d 509, (D.D.C. 1992) (Luck I).

The forfeiture of street time credits has been substituted

into "GOOD TIME CREDIT ACT" <u>in disguised</u>, so that parolees will

remain <u>unlawfully</u> under the Federal Parole Commission's jurisdiction

and will have to "REPEAT" the    "RESURRECTED" <u>same</u> length of

custody, when a parole violation does occur.   This above claim

<u>sustain</u> a clear "EX POST FACTO CLAUSE" and invades the Congressional

Intent of Congress, when the granting of parole is being "ABOLISH"

in another form.   <u>A prisoner sentence have a beginning and an ending</u>

<u>date, no Governmental officials have judicial or legislative power</u>

<u>to change this style of law at all.   This case is not based on</u>

<u>Congressional Doubts at all, but encompass Congressional Errors</u>

<u>and the Parole Commission must accept his eternal "PHASE-OUT."</u>

- 1) -

Government Officials cannot operate outside of the law or perjured their "SWORN OATH" in official office, deviate from the supreme laws of this land nor infringe upon the Federal Constitution, which could result to "IMPEACHMENT."

ARTICLE VI, CLAUSE 2 which stipulates:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties Made, under the Authority of the United States, shall be the Supreme Law of the Land:  and the Judges in Every State shall be bound thereby, any State to the Contrary notwithstanding.

ARTICLE II, SECTION 4 which stipulates:

> The President, Vice President and all civil Officers of the United States, shall be removed from Office on Impeachment for, and Conviction of, Treason, Bribery, or other High/Hate Crimes and Misdemeanors.

ARTICLE I, Section 9, Clause 2 and 3 which stipulates:

> The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the public Safety may Require it.

> No Bill or Attainder or Ex Post Facto Law shall be passed.

The Canon Codes of Professional Ethics must be enforce by the courts and must be respected by members of the Bar if they are to maintain public confidence in the integrity and impartiality of the administration of justice.  In re Meeker, 76 N.M. 354, 414 P. 2d 862, 864 (1996) appeal dismissed, 383 U.S. 499 (199). See also, Freeman v. Lane, 962 F. 2d 1252 (7th Cir. 1992).

Accordingly, the judicial function has two distinct elements: consideration of what the law means and application of the law to cases and controversies. "Consideration" of laws involves not only interpreting the relevant constitutional, statutory, and common law, but also determining whether legislation and its execution are consist- ent with the constitution. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1801). "Application" of the resulting law involves "pronouncing a judgment and carry[ing] it into effect." Muskrat v. United States, 219 U.S. at 356, 31 S. Ct. at 253.

In order to assess the potential impairment of the function of the judiciary caused by service of executive officials on a Parole Panel or Commission acting under an Independent Agency, one must first define that function. In this regard, the Supreme Court has characterized the judicial function as "the duty of interpreting and applying [laws] in cases properly brought before the courts," Massachusetts v. Mellon, 262 U.S. at 488, 43 S. Ct. at 601, and as "the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." Muskrat v. United States, 219 U.S. at 361, 31 S. Ct. at 255.

The federal judiciary's power to hear cases is constutionally confined to "cases" is "controversies, U.S. Constitutionally Article III, § 2, which impose certain limits on the federal courts. As the Eleven Circuit has held, "one of the most important of these con- stitutionally based limits is the requirement that a litigant have "standing" to invoke the power of a federal court " Malowney v.

- 14 -

Federal Collection Deposit Group, 193 F. 3d 1342, 1346, (11th Cir.
1999).  Article III's standing requirement is intended, inter alia,
to preserve the separation of powers, conserve judicial resources,
improve judicial decision-making, and foster fairness for those who do
not want their rights litigated by someone other than themselves. See
Erwin Chemrinsky.  Federal Jurisdiction 57-59 (3 L. Ed. 1999).

The petitioner contends that the Commission does usurped a
judicial function revoking his parole, the constitutional authority
of a parole agency to detain a parolee, and to return the parolee to
prison upon an order revoking parole, is well established. See
Morrissey v. Brewer, 408 U.S. 471 (1972).  More specficially, the
federal parole statute does confer a judicial function on the
Commission in violation of the separation of powers doctrine, mainly
when parolees are deprived of their "STREET TIME CREDITS' when they
return back to jail on a parole detainer.  It is clearly a violation
of the "DOUBLE JEOPARDY CLAUSE", when a parolee has to serve a prison
term on a parole violation and than have to re-serve a second parole
term again, in which, he was revoke for in the first instance.  There
can never be a law or statute that can authorize parole officials to
deprive a parolee of his street time credits, because this suspension
of his/her sentence, clearly expand his expiration of the imposed
court's sentence without fair due process of the law and Congress
cannot approve a person serving "MULTIPLE PUNISHMENT' or authorize
Article III Judges to hold a sentence in abeyance at all.  See
North Carolina v. Pearce, 23 L. Ed. 2d. 656.

II.     Parole Commission does unconstitutionally infringe on a "judicial function" when it denies parole.

Prisoners that expect to be timely release on parole are harassed by parole officials and their early release date is routinely based on the nature of his criminal case or background that seems to carried him/her beyond his minimum term. The named sentencing judge had all ready study the pretrial Presentence Report, any trial informations and had decided the actual sentence to imposed. Parole officials cannot re-evaluate a second opinion of the petitioner's Criminal File and pre-judge that the judge had erreg by not given the petitioner a harsh punishment for the nature of the offense. Furthermore, once a parolee has been re-arrested by law enforcement agents, the Parole Commission automatically move the U.S. Marshal Service to obtained a warrant for the parolee to be held in custody for a Prison In-House Hearing and not to be held for a Court Hearing. The petitioner is deprived of a "BOND HEARING" due to a lodged detainer for the Parole Commission and the Court does not intervene at all. In most cases, whether the parolee win or lose his case in the court of law, the Parole Commission seeks to violate the parolee on pre-pondence of evidences, by "SUPERSEDING" acquittal charges by the court, and further seeks punishment on the parolee, without a Judgment and Commitment Order. This constitute an infrigement above judicial function and a detainer has been substituted for a "JUDGMENT AND COMMITMENT ORDER", which place the parolee in custody unlawfully, in the hands of the prison authority and the U.S. Attorney General.

III.    The power to arraign a person, hold without a bond,
        release a person, sign official arrest warrants or
        detainers, fine, punish and sentence a person, de-
        cide court's proceedings, sign Judgment and Com-
        mitment Orders, hold Show Cause Hearing and parole
        revocation hearings, pretrial hearings, re VOKE a
        person back into custody, all remains into the sole
        discretion of an "ARTICLE III JUDGE" only.

It is well established that "the judicial power" is vested

solely in Article III Courts,  see U.S. Const. art. III, § 1, with

very limited exceptions.  Numerous courts have confirmed that im-

posing a sentencing is part of the judicial power.  See Ex parte

United States, 242 U.S. 27, 37 S. Ct. 72, 61 L. Ed. 129 (1916)

(holding that imposition of punishment is a judicial function);

U.S. v. Johnson, 48 F. 3d 806, 808-9 (4th Cir. 1995), citing

Ex Parte United States, 242 U.S. 27, 41, 37 S. Ct. 72,

61 L. Ed. 129 (1916) ("imposition of a sentence ... is a core

judicial function" that "cannot be delegated to nonjudicial officials);

U.S. v. Griffith, 85 F. 3d. 2d 284, 290, (7th Cir. 1996) (noting

that Mistretta v. United States, 488 U.S. 361, 109 S. Ct. 647, 102

L. Ed. 2d 714 (1989), was "based in large, degree, on the fact

that the power to determine sentences had always resided in the

judicial branch");  U.S. v. Earley, 816 F. 2d 1428, 1444 (10th

Cir. 1987) (describing the sentencing power as a judicial power);

U.S. v. Denson, 588 F. 2d 1112, 1127 (5th Cir. 1979); (analyzing

"the judicial power to sentence");  Hood v. United States, 469

F. 2d 721, 722 n. 2 (8th Cir. 1972) (discussing the judicial power

to impose a sentence");  U.S. v. Golino, 956 F.Supp. 359 (E.D.N.Y.

- 17 -

1997) ("The imposition of sentence is a core judicial function,
and determination of the timing and schedule of restitution
installment payments is not the type of duty that may be de-
legated"); Aubin v. U.S., 943 F.Supp. 126, (D.Mass. 1996),
citing U.S. v. Johnson, 48 F. 3d 806, 808-09 (4th Cir. 1995)
("The basic point is that the imposition of a sentence, in-
cluding determination of conditions of supervised release, is
a core judicial function, the delegation of which may be limited
by Article III of the Constitution.").

    The distinction between executive power over the execution
of a sentence and judicial power over the imposition of a sentence
was explained nearly seventy (70) years ago by the Supreme Court:

> The judicial power and the executive
> power over sentence are readily distin-
> guishable.  To render judgment is a ju-
> dicial function.  To carry the judgment
> into effect is an executive function.
> To cut short a sentence by an act of
> clemency is an exercise of executive
> power which abridges the enforcement of
> the judgment, but does not alter it qua
> judgment.  To reduce a sentence by amend-
> ment alters the terms of the judgment
> itself and is a judicial act as much as
> the imposition of the sentence in the
> first instance. U.S. v Benz, 282 U.S. 304,
> 311, 51 S. Ct. 113, 75 L. Ed. 354 (1931).

    Thus, although the executive branch may "cut short a sentence,"
altering the actual terms of a sentence and imposing a sentence
in the first instance are solely "judicial acts."

- 18 -

The statutes governing federal sentencing confirm that courts and no other federal bodies are vested with the power to impose a sentence. Section 3551 of the Chapter on Sentences in the United States Code provides that "a defendant who has been guilty of an offense ... shall be sentenced in accordance with the provisions of this subchapter." 18 U.S.C.A. § 3551 (a) (1985) (emphasis added). Section 3553 repeatedly states that "the court shall impose a sentence" or the court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." Id. (Supp. 1999)(emphasis); see also §§ 3554-3556, 3562-3564; 3572 (1985). The statutes dealing with imprisonment, see §§ 3582-3586, also speak exclusively of "the court," and never once mention that any other branch or agency of the government has the authority to impose a term of imprisonment. In fact, the petitioner's Pro Bono Counsel have found no instance where any federal entity, other than a judicial officer of the United States, has been authorized to commit a person to a term of imprisonment and Congress delegation of power to the Executive Branch has been found to be unconstitutional, as well as a "FRAUD UPON GOVERNMENTAL ENTITIES.

Furthermore, prison officials had deprived prisoners of Halfway House, Home Confinement, Camp privilege, Work Release Status and other Congressional privileges, by threats of prison sanctions, if they don't pay Court's fines to them. This really constituted "EXTORTION AND BLACKMAIL" by prison officials, that the Court cannot delegate the enforcement of restitution or Court's

Accessment Fines to Non-Judicial Officers (Prison officials)! See
United States v. Johnson, 48 F. 3d 806, 808-09 (4th Cir. 1995);
See also, U.S. v. Miller, 77 F. 3d. 71, (4th Cir. 1996). See
28 C.F.R. § 545.11 (d), 28 C.F.R. § 545.24 (c). In fact, the
United States Sentencing Guideline Manuals 2B1.1 (b)(1)(g), has
already had carried-out punishment on a federal prisoner, when
he or she has been "ENHANCED" for Base Offense Level points and
prison officials cannot carried-out a second punishment by "WITH
HOLDING GOOD TIME CREDITS" on institutional infractions, or make
any determination concerning the six (6) months Halfway House or
Home Confinement placement at all. The Statute Title 18 U.S.C.
§ 3624 and 3621 has been construed for prison officials not to
override the Congressional Intent of Congress in some fashion. See
Golding v. Winn, 383 F. 3d 17, 27 (1st Cir. 2004). Title 18 U.S.C.
§ 3624 must be interpret a little more further, because it allow
the Bureau of Prison officials to forfeit "GOOD TIME Credits from
prisoners, as well as 28 Code of Federal Regulation § 541.13 (f),
as if they where Congress himself, recalling the Congressional
Benefits within the above Criminal Statute (18 USC § 3624).

This Honorable Court must take extreme "CAUTIOUS" and strike
the "HIDDEN CORRUPTION" behind "VINDICTIVE-LEGISLATURE", when there
is a strong showing of "BAD FAITH" or "IMPROPER BEHAVIOR" by un-
known Governmental officials perverting justice, with gross dis-
regards of their "SWORN OATH" in officials official. Harlow v.
Fitzgerald, 457 U.S. at 818; see also Mitehell v. Forsyth, 472 U.S.
511, 526 (1985).

- 26 -

WHETHER CONGRESS HAS CREATED STATUTES
FOR PAROLE AND PRISON OFFICIALS TO TAKE
URINE AND DNA BLOOD SAMPLES IN JAIL AND
ON SUPERVISED RELEASE TERM ?

Subsequently to the publication of the interim rule,

Congress enacted Public Law 107-56, the USA Patriot Act.

Section 503 of the USA Patriot Act provided that three (3)

additional categories of offenses shall be treated for

purpose of DNA sample collection as qualifying federal

offenses, as determined by the Attorney General:  (1) Any

offense listed in section 2332 (g)(5)(B) of title 18 United

States Code;  (2)  any crime of violence (as defined in

section 16 of title 18, U.S. Code;  and (3) any attempt or

conspiracy to commit any of the above offenses.  See 42 U.S.C.

§ 14135a (d)(2).  The Department of Justice published a

proposed rule in the Federal Register on March 11, 2003, to

implement this explanded sample collection authority.  See

Federal Register 11481 (March 11, 2003).  The statute and

rules violated numerous provisions of the Constitution.  See

also C.F.R. § 28.2 .  The probation office "may use or authorize

the use of such means as are reasonable necessary to detain,

restrain, and collect a DNA sample" from any individual who

refuses to give a sample.  See id. § 14135a (a)(4)(A).  An

individual who fails to give a DNA sample is guilty of a class

A misdemeanor.  See id. § 14135a (a)(5).

- 21 -

The collection of a DNA sample taken from any in-
dividual who refuses to give a sample is a threat to his
or her human nature and Constitutional Rights invaded by
Congress and those who execute the physical acts. Whether
the enforcement comes through a court order or not, it is
still remains to be unconstitutional under the Fourth
Amendment, Fifth Amendment, Eighth Amendment, Nineth Amend-
ment and the Fourteenth Amendment Rights. A condition of
parole or supervised release term that has not been order
by a judicial court, as an additional punishment, is a violation
of the Separation of Power, because a felony charged that al-
ready has been prosecuted, cannot be converted into a small
misdemeanor. <u>A prisoner cannot become a suspect for a future</u>
charge that the government has an "unparticularized <u>suspicion</u>
or hunch." <u>U.S.</u> v. <u>Sokolow</u>, 490 U.S. 1, 7, 104 L. Ed. 2d. 1,
10 (1989) ( quoting <u>Terry</u> v. <u>Ohio</u>, 392 U.S. at 27, 20 L. Ed.
2d at 9090. The Fourth Amendment to the United States Con-
stitution provides that "[t]he right of the people to be secure
in their persons, houses, papers, and effects, against un-
reasonable searches and seizures, shall not be violated ..."
Requiring a person to give blood sample constitutes a Fourth
Amendment search. <u>Skinner</u> v. <u>Railway Labor Executive Ass'n</u>.
489 U.S. 602, 616 (1989) ("[T]his physical intrusion, penetrating
beneath the skin, infringes upon an expectation of privacy

- 22 -

that society is prepared to recognize as reasonable.").

The ensuing chemical analysis of the sample to obtain physiological data " is also a search covered by the Fourth Amendment.  Id.  The fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search.  U.S. v. knights, 534 U.S. 112, 118 (2001).  If the search is reasonable, there is no constitutional problem, for the Fourth Amendment only protects individuals from unreasonable search and seizures.  Skinner, 489 U.S. at 619. Determing whether a search in reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or itself." Skinner, 489 U.S. at 619.

This case further falls into a meritorious claim under the Parole and the Probationary Officials that supervise all parolees within the UNited States.  If a parolee or defendant on pretrial status are required to submit a urine whether it be negative or positive to assigned governmental officials.  If the urine test comes up "positive" the person's status will be "REVOKE" and re-detain back into jail by a Parole Commission's filed warrant.  The petitioners again "PROTEST" that the above condition of submitting a urine is another form of DNA study and will "SELF-INCRIMINATE" himself at his own revocation hearing. This constitute a clear violation of his or her "MIRANDA RIGHTS" and a defnse lawyer cannot refut this argument at all.  The Constitutional Amendments protects a person in all stages of his parole or court's hearings, pursuant to Title 18 USC § 242.

PRO SE ATTorney          - 23 -          Milton J. Taylor