UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MILTON JOSEPH TAYLOR, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-1634 (EGS) |
| ) | |
| ELEANOR HOLMES NORTON, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## **MEMORANDUM OPINION**

This matter is before the Court on consideration of petitioner's *pro se* petition for a writ of habeas corpus.[1]  Having considered the petition and the federal respondents' opposition, the Court will deny the petition.[2]

I.  BACKGROUND

In the Superior Court of the District of Columbia, petitioner was convicted of distribution of heroin on June 14, 2002.  Pet. at 3.  The court suspended a five-year prison sentence, and instead imposed a term of two years' probation followed by a five-

---

[1] Because petitioner challenges the execution of his sentence, the Court construes his "Emergency Writ of Mandamus" as a petition for a writ habeas corpus.

[2] Although petitioner names Eleanor Holmes-Norton as a respondent in this action, nowhere is there an allegation against her.  Furthermore, she is not his custodian, and, therefore, is not a proper respondent to a habeas petition.  *See Rumsfeld v. Padilla*, 542 U.S. ___, ___, 124 S.Ct. 2711, 2717-18 (2004); *Blair-Bey v. Quick*, 151 F.3d 1036, 1039 (D.C. Cir. 1998) (citing *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810 (D.C. Cir. 1988)).

1

year term of supervised release.[3]  *Id.*  On May 7, 2004, the court revoked probation for reasons that are not explained in the record, and imposed a term of 20 months' imprisonment followed by a two-year term of supervised release.[4]  *Id.*, Ex. (Judgment and Commitment Order, Criminal Case No. F-4745-01).  The United States Parole Commission ("Parole Commission") imposed a Special Drug Aftercare condition that petitioner participate in an approved treatment program from narcotic addition or drug dependency.  United States' Opp. to Pet.'s Pet. for an Emergency Writ of Mandamus, Ex. 2 (Notice of Action dated April 14, 2005).  Petitioner began his term of supervised release on or about June 17, 2005.  Pet., Ex. (Certificate of Supervised Release dated 5-23-2005; petitioner's signature witnessed 7-19-05).

## II.  DISCUSSION[5]

The petition is not a model of clarity.  In a disorganized fashion, it appears to present rambling legal arguments in essence challenging the authority of the Parole Commission in his case.[6]  He begins by arguing that the Parole Commission has been

---

[3]     Petitioner was given credit for jail time served.  *See* Pet., Ex. (Judgment and Commitment Order, Criminal Case No. F-4745-01).

[4]     To the extent petitioner challenges his sentence on the ground that it exceeded the maximum term allowed under District of Columbia law, this challenge must be raised by motion in the Superior Court.  *See* D.C. Code § 23-110(a).

[5]     Petitioner is serving a term of supervised release, not parole.  All of his arguments regarding parole, parole revocation, issuance and execution of parole violator warrants, credit for "street time" and the Parole Commission's authority with respect District of Columbia parolees are irrelevant as they do not apply to him.  Insofar as plaintiff raises these claims on behalf of other prisoners and parolees, he does not have standing to do so.

[6]     Petitioner raises the same arguments in abbreviated form in "The Petitioner's Motion for Summary Judgment or in Alternative Grant Him a Preliminary

abolished. Contrary to petitioner's assertions, however, the Parole Commission remains in existence, at least until October 2008. *See* United States Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub. L. No. 109-76, § 2, 119 Stat. 2035 (Sept. 29, 2005).

### A. Sentencing

Petitioner argues that the Parole Commission usurps judges' authority by imposing or extending prison sentences. *See* Pet. at 1, 6-8. He apparently misunderstands the respective roles of judges and Parole Commission members. Superior Court judges have "jurisdiction of any criminal case under any law applicable exclusively to the District of Columbia." D.C. Code § 11-923(b)(1). If a judge imposes a term of probation, he is authorized to revoke probation and impose a sentence. The District of Columbia Code in relevant part provides:

> At any time during the probationary term the court . . . may revoke the order of probation and cause the rearrest of the probationer and impose a sentence and require him to serve the sentence or pay the fine originally imposed, or both, as the case may be, or any lesser sentence. If imposition of sentence was suspended, the court may impose any sentence which might have been imposed. If probation is revoked, the time of probation shall not be taken into account to diminish the time for which he was originally sentenced.

D.C. Code § 24-304(a).

In petitioner's case, the Superior Court judge initially suspended a five-year prison sentence, and chose instead to place petitioner on probation. Petitioner's return to custody upon revocation of probation came about by court Order. *See* Pet., Ex.

---

Injunctive Order to Stay his Supervise[d] Release" [Dkt. #11]. The petition will be denied, and petitioner's motion will be denied as moot.

(Judgment and Commitment Order revoking probation). The Parole Commission played no role in petitioner's return to custody, and cannot be accused of imposing a sentence as if its members were judges.

*B.  Supervised Release*

Generally, petitioner argues that the Court Services and Offender Supervision Agency ("CSOSA") and the Parole Commission "lack[] subject matter jurisdiction over the petitioner's sentence." Pet. at 1. Under applicable law, both entities have jurisdiction while petitioner is serving his supervised release term. The District of Columbia Code provides that:

> [CSOSA] shall supervise any offender who is released from imprisonment for any term of supervised release imposed by the Superior Court of the District of Columbia. Such offender shall be subject to the authority of the United States Parole Commission until completion of the term of supervised release. The United States Parole Commission shall have and exercise the same authority as is vested in the United States district courts by paragraphs (d) through (*i*) of § 3583 of title 18, United States Code.

D.C. Code § 24-133(c)(2); *see* D.C. Code § 24-403.01(b)(6) ("Offenders on supervised release shall be subject to the authority of the United States Parole Commission until completion of the term of supervised release."). The federal provisions cited, 18 U.S.C. § 3583(d) - (*i*), pertain to conditions of supervised release, modification of conditions of supervised release, and revocation of supervised release for federal prisoners. Comparable provisions are made applicable to District of Columbia Code offenders. D.C. Code § 24-133(c)(2).

Petitioner suggests that, for "any small violation that may occur during his Supervised Release Term," a warrant will issue for execution by the United States

Marshal, and upon its execution, he will find himself at the D.C. Jail, "kidnapped," without a court order to authorize his return to custody.  See Pet. at 11.  Such harms are speculative, and absent an actual case or controversy, there is no issue for resolution by this Court.

### C.  Urine and DNA Samples

Lastly, petitioner claims that the collection of urine and blood samples from District of Columbia Code offenders violates the Fourth and Fifth Amendments to the United States Constitution.  See Pet. ("Memorandum of Laws in Support of the Petitioner's Writ of Mandamus Filed Under Pro Se Status") at 21-23.  He argues that a positive urine test result inevitably leads to the revocation of supervision and return to jail pursuant to a Parole Commission warrant.  Id. at 23. Further, he argues that requiring urine samples as a condition of release "is another form of DNA study and will "self-incriminate" himself at his own revocation hearing."  Id. at 23.  With regard to compulsory collection of DNA samples, petitioner argues that prisoners are considered suspects on future charges without any cause to believe that they may be guilty of crimes.  Id. at 22.

A mandatory condition of release is an offender's "cooperat[ion] in the collection of a DNA sample . . ., if the collection of a DNA sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000."  18 U.S.C. § 3583(d).  Accordingly, petitioner's Certificate of Release includes as a condition of his release a requirement that he provide a DNA sample if its collection is required by law.  See Resp't Resp., Ex. 3 at 2 (Certificate of Release, General Conditions, No. 17). It appears

5

that petitioner submitted a DNA sample on February 2, 2005. *See* "The Petitioner [sic] Motion to Strike the Government's Opposition Motion and to Grant his Emergency Writ of Mandamus as Justice Requires Under the Law" at 3-6 & Ex. A (Notice of Release and Arrival).

Courts that have considered Fourth and Fifth Amendment challenges to the DNA Act conclude that collection of DNA samples violates neither provision. The actual extraction of blood for the purpose of collecting a DNA sample does implicate the Fourth Amendment, but nonetheless is considered a minor intrusion. *See Johnson v. Quander*, __ F.3d __, 2006 WL 662748 (D.C. Cir. Mar. 17, 2006) (mandatory collection of probationer's DNA sample was reasonableunder the Fourth Amendment's balancing test); *United States v. Sczubelek*, 255 F.Supp.2d 315, 323 (D. Del. 2003) (citing *Schmerber v. California*, 384 U.S. 757, 767-68 (1966)), *aff'd*, 402 F.3d 175 (3d Cir. 2005), *petition for cert. filed* (U.S. Dec 02, 2005) (No. 05-7955). The subsequent "DNA profile derived from the defendant's blood sample establishes only a record of the defendant's identity – otherwise personal information in which the qualified offender can claim no right of privacy once lawfully convicted of a qualifying offense." *United States v. Kincade*, 379 F.3d 813, 837 (9th Cir. 2004), *cert. denied*, 125 S.Ct. 1638 (2005); *Groceman v. United States Dep't of Justice*, 354 F.3d 411, 414 (5th Cir. 2004) (per curiam) (upholding dismissal of claim that DNA Act violates Fourth Amendment proscription against unreasonable searches); *see Jones v. Murray*, 962 F.2d 302, 306 (4th Cir.) ("[W]hen a suspect is arrested on probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it."), *cert. denied*,

506 U.S. 977 (1992).

DNA samples are not testimonial in nature, and thus do not violate a criminal defendant's Fifth Amendment protection from self-incrimination. *See, e.g., Boling v. Romer*, 101 F.3d 1336, 1340 (10th Cir. 1996) (plaintiff's Fifth Amendment claim, alleging that requiring DNA samples from inmates amounts to compulsory self-incrimination, fails because DNA samples are not testimonial in nature); *Moss v. Johnson*, No. 2:04-CV-0142, 2004 WL 2248262 at *2 (N.D.Tex. Oct. 6, 2004) (rejecting Texas prisoner's challenge based on Fifth Amendment protection against self-incrimination because DNA sample was not "testimonial or communicative in nature"); *Padgett v. Ferrero*, 294 F.Supp.2d 1338, 1344 (N.D. Ga. 2003) (rejecting Georgia prisoners' claims that DNA samples violate Fifth Amendment and Georgia Constitution because samples not testimonial in nature), *aff'd*, 401 F.3d 1273 (11th Cir. 2005); *cert. denied sub nom. Boulineau v. Donald*, 126 S.Ct. 352 (2005); *cf. Johnson v. Quander*, 370 F.Supp.2d 79, 92 (D.D.C. 2005) (finding District of Columbia's implementation of DNA Act poses only remote risk of erroneous deprivation of procedural due process rights), *aff'd*, __ F.3d __, 2006 WL 662748 (D.C. Cir. Mar. 17, 2006).

With regard to urine samples, petitioner is subject to a Special Drug Aftercare Condition, which compels his participation in a suitable program for treatment of narcotic addiction or drug dependency. *See* Resp't Resp., Ex. 3 at 4. Petitioner is ordered to abstain from alcohol and other intoxicants, and may be subject to testing and examination to determine whether he has used drugs. *Id.* Imposition of these

conditions of supervised release is well within the Parole Commission's authority.

### III.  CONCLUSION

A writ of habeas corpus shall not extend to a District of Columbia prisoner unless he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3).  Petitioner has made no such showing, and, therefore the Court must deny his petition.  An Order consistent with this Memorandum Opinion will be issued on this same date.


Signed:     EMMET G. SULLIVAN
            United States District Judge

Dated:      April 20, 2006