**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ────────────────────────── ) | |
| MILTON JOSEPH TAYLOR, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-1634 (EGS) |
| ) | |
| ELEANOR HOLMES NORTON, *et al.*, ) | |
| ) | |
| Respondents. ) | |
| ────────────────────────── ) | |

**MEMORANDUM OPINION**

This matter is before the Court on consideration of petitioner's *pro se* petition for

a writ of habeas corpus.[1]  Having considered the petition and the federal respondents'

opposition, the Court will deny the petition.[2]

I.  BACKGROUND

In the Superior Court of the District of Columbia, petitioner was convicted of

distribution of heroin on June 14, 2002.  Pet. at 3.  The court suspended a five-year

prison sentence, and instead imposed a term of two years' probation followed by a five-

_____

[1]     Because petitioner challenges the execution of his sentence, the Court
construes his "Emergency Writ of Mandamus" as a petition for a writ habeas corpus.

[2]     Although petitioner names Eleanor Holmes-Norton as a respondent in this
action, nowhere is there an allegation against her.  Furthermore, she is not his
custodian, and, therefore, is not a proper respondent to a habeas petition.  *See*
*Rumsfeld v. Padilla*, 542 U.S. ___, ___, 124 S.Ct. 2711, 2717-18 (2004); *Blair-Bey v.*
*Quick*, 151 F.3d 1036, 1039 (D.C. Cir. 1998) (citing *Chatman-Bey v. Thornburgh*, 864
F.2d 804, 810 (D.C. Cir. 1988)).

year term of  supervised release.[3]  *Id.*  On May 7, 2004, the court revoked probation for

reasons that are not explained in the record, and imposed a term of 20 months'

imprisonment followed by a two-year term of supervised release.[4]  *Id.*, Ex. (Judgment

and Commitment Order, Criminal Case No. F-4745-01).  The United States Parole

Commission ("Parole Commission") imposed a Special Drug Aftercare condition that

petitioner participate in an approved treatment program from narcotic addition or drug

dependency.  United States' Opp. to Pet.'s Pet. for an Emergency Writ of Mandamus,

Ex. 2 (Notice of Action dated April 14, 2005).  Petitioner began his term of supervised

release on or about June 17, 2005.  Pet., Ex. (Certificate of Supervised Release dated

5-23-2005; petitioner's signature witnessed 7-19-05).

## II.  DISCUSSION[5]

The petition is not a model of clarity.  In a disorganized fashion, it appears to

present rambling legal arguments in essence challenging the authority of the Parole

Commission in his case.[6]  He begins by arguing that the Parole Commission has been

---

[3]    Petitioner was given credit for jail time served.  *See* Pet., Ex. (Judgment
and Commitment Order, Criminal Case No. F-4745-01).

[4]    To the extent petitioner challenges his sentence on the ground that it
exceeded the maximum term allowed under District of Columbia law, this challenge
must be raised by motion in the Superior Court.  *See* D.C. Code § 23-110(a).

[5]    Petitioner is serving a term of supervised release, not parole.  All of his
arguments regarding parole, parole revocation, issuance and execution of parole
violator warrants, credit for "street time" and the Parole Commission's authority with
respect District of Columbia parolees are irrelevant as they do not apply to him.  Insofar
as plaintiff raises these claims on behalf of other prisoners and parolees, he does not
have standing to do so.

[6]    Petitioner raises the same arguments in abbreviated form in "The
Petitioner's Motion for Summary Judgment or in Alternative Grant Him a Preliminary

abolished.  Contrary to petitioner's assertions, however, the Parole Commission

remains in existence, at least until October 2008.  *See* United States Parole

Commission Extension and Sentencing Commission Authority Act of 2005, Pub. L. No.

109-76, § 2, 119 Stat. 2035 (Sept. 29, 2005).

*A.  Sentencing*

Petitioner argues that the Parole Commission usurps judges' authority by

imposing or extending prison sentences.  *See* Pet. at 1, 6-8.  He apparently

misunderstands the respective roles of judges and Parole Commission members.

Superior Court judges have "jurisdiction of any criminal case under any law applicable

exclusively to the District of Columbia."  D.C. Code § 11-923(b)(1).  If a judge imposes a

term of probation, he is authorized to revoke probation and impose a sentence.  The

District of Columbia Code in relevant part provides:

> At any time during the probationary term the court . . . may
> revoke the order of probation and cause the rearrest of the
> probationer and impose a sentence and require him to serve
> the sentence or pay the fine originally imposed, or both, as the
> case may be, or any lesser sentence.  If imposition of sentence
> was suspended, the court may impose any sentence which
> might have been imposed.  If probation is revoked, the time of
> probation shall not be taken into account to diminish the time
> for which he was originally sentenced.

D.C. Code § 24-304(a).

In petitioner's case, the Superior Court judge initially suspended a five-year

prison sentence, and chose instead to place petitioner on probation.  Petitioner's return

to custody upon revocation of probation came about by court Order.  *See* Pet., Ex.

Injunctive Order to Stay his Supervise[d] Release" [Dkt. #11].  The petition will be
denied, and petitioner's motion will be denied as moot.

(Judgment and Commitment Order revoking probation).  The Parole Commission

played no role in petitioner's return to custody, and cannot be accused of imposing a

sentence as if its members were judges.

### B.  Supervised Release

Generally, petitioner argues that the Court Services and Offender Supervision

Agency ("CSOSA") and the Parole Commission "lack[] subject matter jurisdiction over

the petitioner's sentence."  Pet. at 1.  Under applicable law, both entities have

jurisdiction while petitioner is serving his supervised release term.  The District of

Columbia Code provides that:

> [CSOSA] shall supervise any offender who is released from
> imprisonment for any term of supervised release imposed by
> the Superior Court of the District of Columbia. Such offender
> shall be subject to the authority of the United States Parole
> Commission until completion of the term of supervised release.
> The United States Parole Commission shall have and exercise
> the same authority as is vested in the United States district
> courts by paragraphs (d) through (*i*) of § 3583 of title 18,
> United States Code.

D.C. Code § 24-133(c)(2); *see* D.C. Code § 24-403.01(b)(6) ("Offenders on supervised

release shall be subject to the authority of the United States Parole Commission until

completion of the term of supervised release.").  The federal provisions cited, 18 U.S.C.

§ 3583(d) - (*i*), pertain to conditions of supervised release, modification of conditions of

supervised release, and revocation of supervised release for federal prisoners.

Comparable provisions are made applicable to District of Columbia Code offenders.

D.C. Code § 24-133(c)(2).

Petitioner suggests that, for "any small violation that may occur during his

Supervised Release Term," a warrant will issue for execution by the United States

Marshal, and upon its execution, he will find himself at the D.C. Jail, "kidnapped," without a court order to authorize his return to custody.  *See* Pet. at 11.  Such harms are speculative, and absent an actual case or controversy, there is no issue for resolution by this Court.

*C.  Urine and DNA Samples*

Lastly, petitioner claims that the collection of urine and blood samples from District of Columbia Code offenders violates the Fourth and Fifth Amendments to the United States Constitution.  *See* Pet. ("Memorandum of Laws in Support of the Petitioner's Writ of Mandamus Filed Under Pro Se Status") at 21-23.  He argues that a positive urine test result inevitably leads to the revocation of supervision and return to jail pursuant to a Parole Commission warrant.  *Id.* at 23. Further, he argues that requiring urine samples as a condition of release "is another form of DNA study and will "self-incriminate" himself at his own revocation hearing."  *Id.* at 23.  With regard to compulsory collection of DNA samples, petitioner argues that prisoners are considered suspects on future charges without any cause to believe that they may be guilty of crimes.  *Id.* at 22.

A mandatory condition of release is an offender's "cooperat[ion] in the collection of a DNA sample . . ., if the collection of a DNA sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000."  18 U.S.C. § 3583(d). Accordingly, petitioner's Certificate of Release includes as a condition of his release a requirement that he provide a DNA sample if its collection is required by law.  *See* Resp't Resp., Ex. 3 at 2 (Certificate of Release, General Conditions, No. 17). It appears

5

that petitioner submitted a DNA sample on February 2, 2005.  *See* "The Petitioner [sic]

Motion to Strike the Government's Opposition Motion and to Grant his Emergency Writ

of Mandamus as Justice Requires Under the Law" at 3-6 & Ex. A (Notice of Release

and Arrival).

Courts that have considered Fourth and Fifth Amendment challenges to the DNA

Act conclude that collection of DNA samples violates neither provision.  The actual

extraction of blood for the purpose of collecting a DNA sample does implicate the

Fourth Amendment, but nonetheless is considered a minor intrusion.  *See Johnson v.*

*Quander*, __ F.3d __, 2006 WL 662748 (D.C. Cir. Mar. 17, 2006) (mandatory collection

of probationer's DNA sample was reasonableunder the Fourth Amendment's balancing

test); *United States v. Sczubelek*, 255 F.Supp.2d 315, 323 (D. Del. 2003) (citing

*Schmerber v. California*, 384 U.S. 757, 767-68 (1966)), *aff'd*, 402 F.3d 175 (3d Cir.

2005), *petition for cert. filed* (U.S. Dec 02, 2005) (No. 05-7955).  The subsequent "DNA

profile derived from the defendant's blood sample establishes only a record of the

defendant's identity – otherwise personal information in which the qualified offender can

claim no right of privacy once lawfully convicted of a qualifying offense."  *United States*

*v. Kincade*, 379 F.3d 813, 837 (9th Cir. 2004), *cert. denied*, 125 S.Ct. 1638 (2005);

*Groceman v. United States Dep't of Justice*, 354 F.3d 411, 414 (5th Cir. 2004) (per

curiam) (upholding dismissal of claim that DNA Act violates Fourth Amendment

proscription against unreasonable searches); *see Jones v. Murray*, 962 F.2d 302, 306

(4th Cir.) ("[W]hen a suspect is arrested on probable cause, his identification becomes a

matter of legitimate state interest and he can hardly claim privacy in it."), *cert. denied*,

6

506 U.S. 977 (1992).

DNA samples are not testimonial in nature, and thus do not violate a criminal defendant's Fifth Amendment protection from self-incrimination.  *See, e.g., Boling v. Romer*, 101 F.3d 1336, 1340 (10th Cir. 1996) (plaintiff's Fifth Amendment claim, alleging that requiring DNA samples from inmates amounts to compulsory self-incrimination, fails because DNA samples are not testimonial in nature); *Moss v. Johnson*, No. 2:04-CV-0142, 2004 WL 2248262 at *2 (N.D.Tex. Oct. 6, 2004) (rejecting Texas prisoner's challenge based on Fifth Amendment protection against self-incrimination because DNA sample was not "testimonial or communicative in nature"); *Padgett v. Ferrero*, 294 F.Supp.2d 1338, 1344 (N.D. Ga. 2003) (rejecting Georgia prisoners' claims that DNA samples violate Fifth Amendment and Georgia Constitution because samples not testimonial in nature), *aff'd*, 401 F.3d 1273 (11th Cir. 2005); *cert. denied sub nom. Boulineau v. Donald*, 126 S.Ct. 352 (2005); *cf. Johnson v. Quander*, 370 F.Supp.2d 79, 92 (D.D.C. 2005) (finding District of Columbia's implementation of DNA Act poses only remote risk of erroneous deprivation of procedural due process rights), *aff'd*, ___ F.3d ___, 2006 WL 662748 (D.C. Cir. Mar. 17, 2006).

With regard to urine samples, petitioner is subject to a Special Drug Aftercare Condition, which compels his participation in a suitable program for treatment of narcotic addiction or drug dependency.  *See* Resp't Resp., Ex. 3 at 4.  Petitioner is ordered to abstain from alcohol and other intoxicants, and may be subject to testing and examination to determine whether he has used drugs.  *Id.*  Imposition of these

conditions of supervised release is well within the Parole Commission's authority.

## III.   CONCLUSION

A writ of habeas corpus shall not extend to a District of Columbia prisoner unless he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3).  Petitioner has made no such showing, and, therefore the Court must deny his petition.  An Order consistent with this Memorandum Opinion will be issued on this same date.

Signed:        EMMET G. SULLIVAN
               United States District Judge

Dated:         April 20, 2006