UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MILTON JOSEPH TAYLOR,          :
       Petitioner,          :
                                             :
                                             :
       v.          :          Civil Action No. 05-1634
                                             :          (Judge E.G. Sullivan)
ELEANOR HOLMES NORTON, ET AL.,:
       Respondents.          :
_____:

### NOTICE OF APPEAL

This matter was brought before this Court on consideration of petitioner's <u>pro se</u> petition for a writ of mandamus against Congress-Woman Eleanor Holmes Norton, whereas Mr. Taylor had challenged the unlawful "DELEGATED POWER" impermissibly granted to the U.S. Parole Commission to performed a judicial function, in violation of the separation of power and among other things, but Judge Sullivan had <u>arbitrarily</u> refused to adjudicated Mr. Taylor's outstanding claim for relief, <u>by suspending his writ of habeas corpus</u>, <u>in violation of Mr. Taylor's First Amendment Rights</u>. Judge Sullivan had professional knowledge to had known that Congress could not had implemented criminal statutes for the U.S. Parole Commission to make the final judgment on any Supervised Release Offenders or set the full terms of drug testings by the parole officer. See <u>U.S.</u> v. <u>Johnson</u>, 48 F. 3d. 806, 807-808 (4th Cir. 1995), <u>U.S.</u> v. <u>Pruden</u>, 398 F. 3d 241, 251 (3rd Cir 2005) and

-1-

see also, U.S. v. Melendez-Santana, 353 F. 3d 93, 101 (1st Cir. 2003)( The judiciary's "essential role" can be eroded just as easily through improvident delegation as through interference by another branch, id; therefore, separation of powers forbids courts from delegating their Article III responsibilities).

Mr. Taylor's sentencing judge (Wendell P. Gardner-jr.) had co-signed the unlawful delegation of power enforced by Congress because Mr. Taylor's Judgment and Commitment Order does stipulates in relevant part as follow:

> "If you fail to comply with any condition of supervised release, the U.S. Parole Commission may take action against you. That action may include revoking your term of supervised release."

Mr. Taylor now protest to the major fact, that he has never "waived his rights to be brought back before his sentencing judge on any future Show Cause Hearing at all, when the Criminal Rule No. 32.1 require him to be brought back before a magistrate judge under any revocational process. Under the Criminal Rule No. 32, prohibit the U.S. Parole Commission from revoking a parolee or Supervised Release Offender, because that judicial power was always in vested in the hands of the Superior Court Judges, pursuant to D.C. Code § 11-923(b)(1) and the D.C. Code § 24-104. District of Columbia Code 1973, § 24-104, gives the trial court the power to revoke probation.

Pursuant to the D.C. Code § 24-131, § 24-133, § 24-406 and 28 C.F.R. § 2.20, which authorized the U.S. Parole Commission full authority to grant, deny or revoke a D.C. Code Offender's parole or Deny his Supervised Release Term as well, and to impose or modify conditions upon an order of parole, as well as the Parole Commission is authorized to "[i]ssue a warrant for the apprehension and return of the offender to custody, pursuant to Title 28 C.F.R. § 2.98 (a)(2). The Parole Commision have judicial power to forfeit "STREET TIME" from a parolee or Supervised Release Offender, in violation of the "SEPARATION OF POWER" doctrine, and "EX POST FACTO CLAUSE."

Here this Court is now faced with conflict of statutory laws, because the D.C. Code § 24-221.03 authorized a person to be given credit for time spent in custody or on parole as a result of the offense for which sentence was imposed. The Good Time Credits Act of 1996, D.C. ANN §§ 24-428 to 24-434 (1989 Repl) allow prisoners to receive credits for " STREET TIME " that is time served on parole. A provision of the Act codified at section 24-431 (A). See Luck v. District of Columbia, 617 A. 2d 509 (D.D.C. 1992) (Luck I). This Honorable Court was [s]quarely faced with the same above issue, whether a defendant supervised release term can be extended beyond his maximum sentence. See United States v. Milton J. Taylor, Criminal Action No. 97-0035, Civil Action No, 04-669 (GK) decided on 2/4/2005. see also, U.S. v. Thorne, 153 F. 3d 130 (4th Cir. 1998).

Federal judges and State judges are prohibit under Congressional laws, not to impose a sentence beyond the statutory maximum sentence. Asentence imposed outside the range of the applicable sentencing guidelines will be reverse only if it is unreasonable. 18 U.S.C. § 3742 (e)(2). On the contrary, the U.S. Parole Commission's decision are "NON-APPEALABLE" and does violates the parolee due process rights.

Pursuant to Title 18 U.S.C. § 3583 paragraphs (d) through (i), the United States Parole Commission shall not have and exercise the same authority over D.C. Code Offenders, as is vested in the United States District Court, because the United States Parole Commission is not an "ARTICLE III JUDGE" and he has never taken a "SWORN OATH" in office to uphold the law in Good Faith", pursuant to Title 28 U.S.C. § 453. The most important fact is that a probation officer or Parole Commission may not decide the nature or extent of the punishment imposed upon a probationer. Id; see also Ex parte United States, 242 U.S. 27, 41-42, 37 S. Ct. 72, 61 L. Ed. 129 (1916)("[U]nder our constitutional system the right to ... impose the punishment provided by law is judicial..."). See also U.S. v. Denson, F. 1112, 1127 (5th Cir. 1979) ( analyzing "the judicial power to sentence.)"

The U.S. Parole Commission lacks subject matter jurisdiction over all D.C. Code Offenders, because his limited power was only to make a "RECOMMENDATION REPORT" to the sentencing judge to hold a Show Cause Hearing and not to take any further revocational action.

It is well established under federal law that, the U.S. Parole Commission was declared "ABOLISHED" first in the cited case U.S. v. Estrada, 680 F. Supp. 1312, at 1338 and the Supreme Court Justice Judges had declared that the U.S. Parole Commission was abolished for the second time, in the cited case law U.S. v. Mistretta, 488 U.S. 361, during the year of 1992.

Congress-Woman Eleanor Holmes Norton had found an insidiously way to "OVER-TURNED" the above Supreme Court Justice Judges, by extending the U.S. Parole Commission's authority to function further in bad faith of the law, because the U.S. Parole Commission can use the U.S. Marshal Service to "KIDNAPPED" D.C. Code Offenders behind bars, without a signed court order to authorize their return to the custody of the D.C. Jail and the Bureau of Prisons (BOP). Furthermore, the President of the United States of America had also signed into law, legislation extending the Commission until October 31, 2005. See Pub. L. NØ. 107-273, 116 Stat. 1758, 1824. The Parole Commission now remains in existence, at least until October 2008. See U.S. Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub. . No. 109-76, § 2, 119 Stat. 2035 (Sept. 29, 2005).

This Honorable Court was only required to make a ruling on Congress extension violated any Federal Laws, deprived the petitioner of any Constitutional Rights or statutory laws and AS whether the U.S. Parole Commission should remain as acting in capacity of an official judge ?

- 5 -

## WHETHER JUDGE EMMET G. SULLIVAN HAD ABUSED HIS DISCRETION BY REFUSING TO STAY MR. TAYLOR'S SUPERVISED RELEASE TERM ?

Judge Sullivan was highly aware that Mr. Taylor is being subjected under a 2 years Supervised Release Term imposed by a Superior Court Judge, and that, the U.S. Parole Commission have unlawful jurisdiction of Mr. Taylor's remain 2 years said Supervised Release Term.

Mr. Taylor had requested judge Sullivan to "STAY HIS 2 YEARS REMAINING SECOND PORTION OF HIS SENTENCE", because his sentencing judge (Wendell P. Gardner Jr.) had <u>relinquished</u> his legal authority to forever violate Mr. Taylor in the near future.

In Mr. Taylor's Criminal filed number F4745-01, Mr. Taylor had entered into a "Plea Agreement" under the above case number, with the clear understanding that the Government the would dismissed the remaining counts for pleading guilty to "Distribution of Heroin" and that Mr. Taylor imposed sentence will not exceed beyond an " 18 MONTHS CAP." This 18 months Cap was "BREACHED" <u>by judge</u> Gardner Jr. on purpose, because on May 7th, 2004 at Mr. Taylor's Show Cause Hearing, judge Gardner Jr. had imposed a 2 years prison term and a "SILENTLY" 2 years Supervised Release Term off the Court's Audio Sound record. On Marched 16th, 2004, Mr. Taylor had filed a writ of habeas corpus before his sentencing judge above, but the judge had refused to address the merits and stated in open Court that "Mr. Taylor, you think that I am going to let you raise an ineffective assistance of counsel in my courtroom at this hearing

and I will deal with this later, but you are going to jail today."

Judge Wendell P. Gardner Jr. had suspended Mr. Taylor's state writ of habeas corpus and deprived him access to a state forum. This constitute a clear claim under a MISCARRIAGE OF JUSTICE" It is well established pursuant to Article I, Section 9, Clause 2 and 3 which states:

> " The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the public safety may require it."

In this case at bar, judge Emmet G. Sullivan had denied Mr. Taylor to challenge any issue may had effected Mr. Taylor's maximum term of being on Supervised Release Term or what other future punishment that the U.S. Parole Commission can impose on Mr. Taylor, should be consider "irrelevant" and they do not apply to Mr. Taylor. Mr. Taylor contends that, for "any small violation may occur during his Supervised Release Term," a warrant will issue for execution by the United States Marshall, and upon its execution, Mr. Taylor will find himself detain at the D.C. Jail without a court order and the Parole Commission will have the same opportunity to take Mr. Taylor's "Street-Time Credit", as if Mr. Taylor was a parole violator. This is not a "speculation" at all, but a true fact and a controversy for this Court to resolve all future "threats" will deprive Mr. Taylor of his "LIBERTY INTEREST" without fair due process of the law. See Boggs v. Bowron, 842 F. Supp. at 547 (D.D.C. 1983). Steffel v. Thompson, 39 L. Ed. 2d 505 (1994).

-7-

This Court must stay mindful that Mr. Taylor is a Supervised Release Offender under the Superior Court and federal prisoners are entitled to face their sentencing judge for all revocational or Show Cause Hearings, whereas D.C. Code Offenders must be force to be seen by the Parole Panels as a demand. A plainly erroneous condition of supervised release will inevitably affect substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration. Evans, 155 F.3d at 252.

Mr. Taylor's Supervised Release Term remains in jeopardy being under the custody of the U.S. Parole Commission and Supervised Release Term is considered to be Jail custody. See U.S. v. Brown, 117 F.3d ____. For this reason, Judge Sullivan should had rule on Mr. Taylor's 2241 Writ of Habeas Corpus, and vacated his 2 years Supervised Release Term. See U.S. v. Pruden, 398 Fd 241, 251 (3rd Cir. 2005).

Mr. Taylor have a Constitutional Right to protest DNA Collection taken by an "Executive Branch" for future physical evidence illegally obtain by the Government without "Probable Cause or a crime being committed against the United States, in violation of his 4th Amendment Rights.

-8-

### JUDGES AND PAROLE COMMISSIONS HAD ABUSED THEIR DISCRETION WHEN REVOKING A PERSON'S PROBATION OR PAROLE STATUS, ON AN ACCOUNT FOR SUBMITTING A DNA URINE TEST.

The Appellant/Petitioner contends that his sentencing judge or the U.S. Parole Commission had abused their discretion when revoking his/her Probation, Parole or Supervised Release Term, for the sole purpose of being compelled to submit a "Positive Urine Sample" by his/her parole officer, and when the parolee, probationary offender or supervised release offender had failed to meet a schedule appointment. Once a defendant has been pled guilty to his charges and sentenced by the court, he or she can no longer be subjected to a revocational penalty for "FAILURE TO APPEAL" or "FLIGHT RISK" crime procedure, when his or her conviction/sentence has been served. Under a violation of parole or Supervised Release Term has been <u>misconstrued</u> to become a Failure To Appeal (FTA) condition of release, when an "EXECUTIVE OFFICIALS" <u>have no judicial power to imposed a sentence on a parolee or Supervised Release Offender at all</u>. See <u>U.S.</u> v. <u>Johnson</u>, 48 F. 3d 806, 807-09 (4th Cir. 1995). Federal and State Judges had abused their discretion when they had <u>delegated</u> their judicial authority to parole officials to decide how many drug tests a defendant should be forced to undergo. See <u>U.S.</u> v. <u>Melendez-Santana</u>, 353 F. 3d 93, 103 (1st Cir. 2003). The appellant/petitioner again "Protest" that the above condition of submitting a urine is another form of DNA study, in which to had "SELF-INCRIMINATED" himself at his own revocation hearing. This constitute a clear violation of his/her <u>"MIRANDA RIGHTS" with the assistance of trial counsel</u>.

Subsequently to the publication of the interim rule, Congress enacted Public Law 107-56, the USA Patriot Act. Section 503 of the USA Patriot Act provided that three (3) additional categories of offenses shall be treated for purpose of DNA sample collection as qualifying federal offenses, as determined by the Attorney General: (1) Any offense listed in section 2332 (g)(5)(B) of title 18 United States Code; (2) any crime of violence (as defined in section 16 of title 18, U.S. Code; and (3) any attempt or conspiracy to commit any of the above offenses. See 42 U.S.C. § 14135a (d)(2). The Department of Justice published a proposed rule in the Federal Register on March 11, 2003, to implement this explained sample collection authority. See Federal Register 11481 (March 11, 2003). The statute and rules violated numerous provisions of the Constitution. See also C.F.R. § 28.2. The probation office "may use or authorize the use of such means as are reasonable necessary to detain, restrain, and collect a DNA sample" from any individual who refuses to give a sample. See id. § 14135a (a)(4)(A). An individual who fails to give a DNA sample is guilty of a class A misdemeanor. See id. § 14135a (a)(5). Furthermore, a defendant parole will be revoke by the Parole Commission, if he refuse to submit to taken a DNA Test for his parole officer. <u>This constitute a "THREAT" to the person's liberty interest.</u>

The collection of a DNA sample taken from any individual who refuses to give a sample is a threat to his or her human nature and Constitutional Rights invaded by Congress and those who execute the physical acts. Whether the enforcement comes through a court order or not, it is still remains to be unconstitutional under the Fourth Amendment, Fifth Amendment, Eighth Amendment, Nineth Amendment and the Fourteenth Amendment Rights. A condition of parole or supervised release term that has not been order by a judicial court, as an additional punishment, is a violation of the Separation of Power, because a felony charged that already has been prosecuted, cannot be converted into a small misdemeanor. <u>A prisoner cannot become a suspect for a future</u> charge that the government has an "unparticularized <u>suspicion</u> or <u>hunch</u>." <u>U.S.</u> v. <u>Sokolow</u>, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989) ( quoting <u>Terry</u> v. <u>Ohio</u>, 392 U.S. at 27, 20 L. Ed. 2d at 9090. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ..." Requiring a person to give blood sample constitutes a Fourth Amendment search. <u>Skinner</u> v. <u>Railway Labor Executive Ass'n.</u>, 498 U.S. 602, 616 (1989) ("[T]his physical intrusion, penetrating beneath the skin, infringes upon an expectation of privacy that society is prepared to recognize as reasonable."). The ensuing chemical analysis of the sample to obtain physiological data" is also a search covered by the Fourth Amendment. Id. The fundamental task of any Fourth Amendment search. <u>U.S.</u> v. <u>Knights</u>, 534 U.S. 112, 118 (2001).

If the search is reasonable, there is no constitutional problem, for the Fourth Amendment only protects individuals from unreasonable seach and seizures. Skinner, 489 U.S. at 619. Determing whether a search in reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or itself." Skinner, 489 U.S. at 619.

The collection of a DNA sample taken from prisoners and "EX-OFFENDERS" constitute "SHAM-LAWS" enacted by Congress, because whether a person's DNA sample induce by the Government or unlawfully admitted before a Jury Panel as physical evidence. It will be the primary duty for an "UN-OATH BOUND LAWYER" to argue the Criminal Rule No. 403 before the court, so that no "PREJUDICIAL EVIDENCE" will self-incriminate his client's own trial. So therefore, ex-offenders retain his Constitutional Rights to protect him or her in all stages of his/her court's proceedings.

Today, there can be no doubt that the Fifth Amendment privilege serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. Miranda v. Arizona, 384 U.S. 436 (1966). A person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in Miranda, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested. Berkemer v. McCarty, 468 U.S. 420, 434 (1984).

Statements made during custodial interrogation are generally inadmissible unless a suspect has first been advised of his rights. United States v. Geizer, 50 F. 3d 1133, 1138 (2nd Cir. 1995).

Before the court may suppress statements on the ground that they were not made voluntarily, the court must first find that the police engaged in coercive activity which caused the defendant to confess. The Supreme Court in Colorado v. Connelly, 479 U.S. 157 (1986), held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. at 167.

Decision by the D.C. Circuit anticipated and now echo the Connelly rule that the proper judicial focus is on police conduct. In United States v. Bernett, 495 F. 2d 943, 965-66 (D.C. Cir. 1974), the majority held: "The language of the self-incrimination clause '[n]o person ... shall be compelled in any criminal case to be a witness against himself ... ' demonstrates that some form of governmental compulsion is a basic element of an involuntary confession." (emphasis in original). See also, U.S. v. Yunis, 859 F. 2d 953, 962 (D.C. Cir. 1988). Furthermore, in most cases, Law Enforcement Agents seeks to search the minds of a person, by asking question concerning a crime, which will also result to a violation of the 4th Amendment Rights, prior to making a "DRUG OPERATION STING."

- 13 -

Judge Sullivan based his denial of Mr. Taylor writ on the grounds that the protection of the 4th Amendment Rights does not apply to Ex-Offenders and the Government's "Special Needs" to collect DNA samples for the sole purpose of solving past and future crimes. Article III Judges had ruled in favor of the Government's special needs was bias, because an "Ex-Offender" future criminal charges are protected by his 4th Amendment Rights when a police officer pull his vehicle over on a traffic stop and the officer cannot search that car because he had discovered that there is an Ex-Offender behind the driver seat. The Ex-Offender can remain silent under his Miranda Right protection and the Government has to prove every case "Beyond a Reasonable Doubt" before a jury of one's peer. This raise a federal question whether the Government, Trial Judge or a Congressional

criminal statutory act can deprived an Ex-offender of a constitutional right, without Governmental officials conspiring jointly to violate the criminal statutes Title 18 U.S.C. § 241 and 242?

The Constitution was built to protect every person in society and a person DNA sample cannot be use as a "Physical-Evidence" at his own trial to self-incriminate the defendant, without violating the Criminal Rule No. 403. When a defendant appear in court on a Show Cause Hearing, he must admit or deny whether he is guilty of a positive urine test, but the urine sample data sheet has already self-incriminated him, and the Judge will revoke his supervised release term. Furthermore, the U.S. Parole Commission will also "Revoke" the supervised release offender status for refusing to submit a urine test.

- 15 -

Mr. Taylor's entire case encompass a claim of separation of power doctrine being violated by Congress, the U.S. Parole Commission and the District Court Judge refuses to adjudicate a case properly before it. The Court of Appeals may issue a writ of Mandamus, when a pro se petitioner case has been obstructed by the lower court and when their is an intent abused of discretion. See KERR v. UNITED STATES DISTRICT COURT, 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed. 2d (1976). See also 601 F. 2d at 1154.

Executed on this 18th, day of May, 2006

Respectfully submitted
Milton J. Taylor
1175 Stevens Rd. S.E.
Washington, D.C. 20020